**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jerry Albert FORD,**
**Defendant-Appellant.**

**No. 84–5982**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

July 16, 1985.

Foley, Colton & Duncan, P.A., Douglas N. Duncan, West Palm Beach, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Karen Atkinson, Linda Collins-Hertz, Nancy L. Worthington, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, FAY and JOHNSON, Circuit Judges.

PER CURIAM:

Jerry Albert Ford was convicted of conspiracy and possession of cocaine with intent to distribute. 21 U.S.C.A. §§ 841(a)(1), 846; 18 U.S.C.A. § 2. On appeal, he asserts two grounds for reversal: *first*, an illegal search and improper denial of his motion to suppress; and *second*, insufficient evidence to prove a conspiracy. We affirm.

A short recital of the facts shows the basis for the illegal search claim. Jerry Ford lived in a home with his brother, Brian Ford, and Brian's wife and baby. Jerry's bedroom was kept locked and he had the only key. Acting on an informant's information, the Drug Enforcement Administration (DEA) agents went to the residence of Brian Ford. He gave them permission to search the house after being told they thought that Jerry Ford was holding a package of cocaine in the house. The agents searched the house with the exception of Jerry's bedroom which was locked and to which no keys were available. The agents asked if they could bring a narcotics detecting dog to the residence and after Brian said yes, they left.

The agents returned later that day and brought with them the narcotics detecting dog. Brian had consulted with his attorney, however, and would not allow the agents to re-enter the residence without a warrant. An agent informed Brian that if he had to execute a search warrant and cocaine was subsequently found in the house, Brian would probably go to jail.

The following evening, Brian discussed the situation with his wife. Brian was concerned for the safety of his wife and child because of a very recent attempted break-in which Brian reasoned was connected with the cocaine in the house. On Wednesday night, two days after the agents visited the house, Brian broke the lock on Jerry's bedroom door, entered and found cocaine in a tool box inside the room. Brian called his attorney, who then notified the DEA.

The following morning, Brian's attorney, Ruffolo, met the DEA agents at the house and allowed them to enter with a narcotics detecting dog. The dog alerted the agents to the presence of cocaine inside Jerry's bedroom. Based on this information the agents obtained a search warrant, entered the bedroom, and located cocaine inside a tool box.

Ford asserts that his brother, Brian, was acting as an agent or instrument of the Government when he entered the locked bedroom and found cocaine. The Fourth Amendment proscribes only governmental action and therefore a search by a private individual does not raise Fourth Amendment implications. *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Walter v. Unit-*

*ed States,* 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). The Fourth Amendment is applicable, however, when a private citizen acts as "an 'instrument' or agent of the state." *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971); *Lustig v. United States,* 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); *United States v. Clegg,* 509 F.2d 605 (5th Cir.1975); *United States v. Mekjian,* 505 F.2d 1320 (5th Cir. 1975).

 Considering the totality of the circumstances, the district court was not clearly erroneous in finding that Brian had not acted as an instrument or agent of the Government when he searched Jerry's bedroom. Brian had the benefit of counsel and had refused the DEA agents' second request to enter his home unless they obtained a search warrant. Brian conducted his own search of Jerry's bedroom two days after the agents visited his home. While Brian may have been motivated in part by a fear of prosecution, he was concerned for the safety of his wife and child due to a suspicious attempted break-in which Brian attributed to the cocaine allegedly in Jerry's bedroom. There is no evidence that the Government had any preknowledge of the search nor that the agents openly encouraged or cooperated in the search. The motion to suppress was properly denied.

 Ford also argues that the trial court erred in admitting into evidence an extrajudicial statement of an alleged co-conspirator, without which statement, he contends, the evidence is insufficient to prove that he participated in the conspiracy.

A Government witness testified that she knew both Jerry Ford and a man named Bradley Martin. She testified that she had been storing cocaine for Martin and that during a conversation with Ford, he told her "[t]hat he was storing cocaine, like I was." She further testified, over defense counsel's objection, that Martin told her he was also storing cocaine with Ford. She testified that the three of them had been together on different occasions. Evidence

was also presented that the cocaine found in Jerry's bedroom and that previously found in the witness's possession were similarly wrapped.

Since the defendant's own statements constituted independent evidence for the purpose of applying the standards of *United States v. James,* 590 F.2d 575, 581 (5th Cir.) *(en banc),* cert. denied, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), the trial court was not clearly erroneous in determining that substantial independent evidence showed that a conspiracy existed; that Ford and the declarant, Martin, were members of the conspiracy; and that the statements were made during the course of, and in furtherance of, the conspiracy. *See United States v. Zielie,* 734 F.2d 1447, 1457 (11th Cir.1984), cert. denied, —— U.S. ——, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985).

Reviewing the evidence in the light most favorable to the Government, a reasonable jury could find that (1) a conspiracy existed, (2) Ford knew the essential objectives of the conspiracy, and (3) he voluntarily participated in it.

AFFIRMED.