[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15083
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-20003-RAR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRAULIO HILARIO PEREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 25, 2021)

Before JORDAN, NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Braulio Perez appeals his conviction and his 188-month sentence for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  He argues that the district court made a variety of evidentiary errors, that the evidence doesn't support the jury's verdict, and that he doesn't qualify as an armed career criminal under the Armed Career Criminal Act.  For the reasons set forth below, we affirm.

**I**

On August 2, 2018, defendant Braulio Perez got into a verbal altercation with his landlord's son Julio Hernandez and Hernandez's guest, during which Perez flashed a firearm.  Hernandez called the police, who came and arrested Perez.  While the police were at the residence, they and Hernandez searched the yard but couldn't find a firearm.  After the police left, Perez's dog was left barking in the yard, and Hernandez took the dog into Perez's apartment and locked him in the bathroom.  While in the apartment, he saw a firearm.  Hernandez's sister Lisbeth Perello called 911, and when the police didn't come, Hernandez called the police again to say that he had found a firearm in the apartment.  The police subsequently arrived with a search warrant and recovered the firearm from Perez's apartment.

After a trial, a jury found Perez guilty of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and

§ 924(e)(1), and the district court sentenced him to 188 months in prison and a five-year term of supervised release.

## II

On appeal, Perez challenges a variety of evidentiary rulings, the sufficiency of the evidence, and the district court's finding that Perez qualified as an armed career criminal. We'll address each in turn.

## A

Perez raises a Fourth Amendment challenge to the district court's denial of his motion to suppress the firearm recovered from his apartment. He argues that Hernandez was an agent of the government when he found the firearm in Perez's apartment because: (1) law enforcement encouraged, instructed, and worked with Hernandez to search for the firearm in the backyard and then failed to instruct him to stop searching when they left; and (2) Hernandez's primary motive for entering the apartment was to assist law enforcement in the prosecution of Perez.

Generally, the "district court's denial of a motion to suppress is a mixed question of law and fact." *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014). Accordingly, we review a district court's factual findings for clear error and review the application of law to facts de novo. *Id.* We construe all facts in the light most favorable to the government and give substantial deference to the

factfinder's credibility determinations.  *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012).

Because the Fourth Amendment proscribes only governmental action, "[a] search by a private person does not implicate the Fourth Amendment unless he acts as an instrument or agent of the government."  *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003).  We consider two critical factors when determining whether a private person was acting as an instrument or agent of the government: (1) "whether the government knew of and acquiesced in the intrusive conduct"; and (2) "whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends."  *Id.*  Related to the first factor, we also consider whether the government "openly encouraged or cooperated in the search." *See United States v. Ford*, 765 F.2d 1088, 1090 (11th Cir. 1985).

Here, the district court didn't err in denying the motion to suppress because Hernandez was not acting as the government's agent when he found the firearm. Hernandez testified that he went into Perez's apartment only after law enforcement left in order to tie up Perez's dog, which had been left barking in the yard and was scaring his mother.  Moreover, while Hernandez initially searched the backyard for the firearm with the police, the district court found that the officers hadn't instructed or directed Hernandez to go back and look for the firearm in the apartment.  Construing the facts in the light most favorable to the government,

4

there is sufficient evidence to support the district court's determination that law enforcement had no knowledge of Hernandez's search of the apartment and that they did not instruct, direct, or openly encourage Hernandez to enter or search the apartment. *See Steiger*, 318 F.3d at 1045. There is also nothing in the record to indicate that we should disturb the district court's credibility determinations, as the testimony of the government's witnesses are consistent and corroborate one another. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (noting that this Court accepts a district court's credibility determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." (quotation marks omitted)). Therefore, we affirm the denial of Perez's motion to suppress.

**B**

Next, Perez contends that the district court shouldn't have permitted the government to introduce body-camera footage in Exhibits 15 and 16 that contained incendiary statements that he made after he was in custody but prior to being Mirandized. He argues that the evidence is irrelevant, inadmissible hearsay, is substantially more prejudicial than probative, and violates his Fifth Amendment rights.

We review rulings on the admissibility of evidence for abuse of discretion. *United States v. Shabazz*, 887 F.3d 1204, 1216 (11th Cir. 2018). When employing

an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment or has applied the wrong legal standard. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (*en banc*).

The district court didn't err by refusing to exclude the body-camera footage. First, the evidence is relevant. The statements in Exhibit 15 were probative of Perez's possession of a firearm and lend credibility to one witness's testimony that he had run into the house because he saw that Perez had a firearm. The statements in Exhibit 16 were probative of Perez's motive and animosity toward Hernandez. Second, the statements were not inadmissible hearsay because they were made by Perez and were therefore admissible under the party-opponent hearsay exception. *See* Fed. R. Evid. 801(d)(2)(A). Third, the evidence wasn't inadmissible under Rule 403 because exclusion is an extraordinary remedy and the footage here has probative value which is not substantially outweighed by any overwhelming risk of prejudice. *See Shabazz*, 887 F.3d at 1216 (stressing that Rule 403 "should be used only sparingly" and that we "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (quotation marks omitted)).

Finally, the admission of the evidence didn't violate Perez's Fifth Amendment rights. While the statements on the body-camera footage were made after Perez was in custody, they weren't the product of interrogation, as they were

6

voluntary and spontaneous statements that weren't made in response to any express police questioning or its functional equivalent. *See United States v. Suggs*, 755 F.2d 1538, 1541 (11th Cir. 1985) ("Voluntary incriminating statements, however, not made in response to an officer's questioning are freely admissible."). Accordingly, we affirm the district court's admission of the body-camera footage.

## C

Perez also argues that there was insufficient evidence at trial to convict him of possession of a firearm because the government failed to prove actual or constructive possession of the firearm that Hernandez found in his apartment. We review the sufficiency of the evidence supporting a criminal conviction de novo, "view[ing] the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Frazier*, 605 F.3d 1271, 1278 (11th Cir. 2010) (quotation marks omitted). We will not disturb a guilty verdict unless no trier of fact would have found guilt beyond a reasonable doubt. *United States v. White*, 663 F.3d 1207, 1213 (11th Cir. 2011).

To prove a violation of 18 U.S.C § 922(g), the government must show that (1) the defendant knew he was a convicted felon, (2) the defendant knowingly possessed a firearm, and (3) the firearm was in or affected interstate commerce. *Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019). To demonstrate

7

"knowing possession," the government must prove that the defendant had actual or constructive possession of a firearm. *United States v. Vereen*, 920 F.3d 1300, 1310 (11th Cir. 2019). Actual possession requires showing that the defendant had either physical possession of or personal dominion over the firearm. *Id*. Constructive possession requires the government to show that the defendant exercised "ownership, dominion, or control over the firearm or the premises concealing the firearm." *Id*. (alterations adopted) (quotation marks omitted).

Here, the record contains sufficient evidence that a reasonable factfinder could have found that Perez knowingly possessed a firearm beyond a reasonable doubt. Two witnesses testified that Perez threatened to kill Hernandez's guest and lifted up his shirt to reveal a firearm and that a firearm was later found in Perez's apartment. While there were no fingerprints on the firearm, the government provided evidence to exclude Hernandez and his guest as owners of the firearm. "Viewing the evidence in the light most favorable to the Government and resolving all reasonable inferences and credibility evaluations in favor of the jury's verdict," we affirm the jury's guilty verdict. *United States v. Suba*, 132 F.3d 662, 675 (11th Cir. 1998).

**D**

Perez argues that the district court violated his constitutional right to a fair trial when it denied his request to introduce a 911 call made by Hernandez's sister

from the day of his arrest.  He further argues that the evidence was not hearsay because it was being offered to impeach Hernandez and not for the truth of the matter asserted.

Even though "the Constitution unquestionably provides a defendant with the right to be heard," a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Frazier*, 387 F.3d at 1271 (quotation marks omitted).  A defendant's right to present a complete defense is subject to reasonable restrictions.  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  "To the extent that it is ever admissible, extrinsic evidence to attack credibility is usually subject to the discretion of the trial judge."  *United States v. Corbin*, 734 F.2d 643, 655 (11th Cir. 1984) (quotation marks omitted).  And "[a]s a general matter, a party's right to impugn the character for truthfulness of an opposing party's witness is limited to questioning the witness on cross-examination."  *Id.*

The district court correctly concluded that Perez's proposed use of the 911 call was improper impeachment and an improper attack on Hernandez's credibility because it was extrinsic evidence and because it was offered outside of cross-examination.  Perez conceded at trial that the evidence didn't fall under a hearsay exception but argued that he wanted to attack the credibility of Hernandez, a witness who didn't even make the phone call.  Moreover, we cannot say that Perez

9

was denied an opportunity to attack Hernandez's credibility through proper avenues, because he intentionally chose not to use this evidence during cross-examination and did not attempt to call Perello as a witness during his case in chief. Because the district court correctly applied the Federal Rules of Evidence to exclude hearsay, Perez's constitutional right to put on a complete defense was not violated. *See Scheffer*, 523 U.S. at 308 (noting that rules excluding evidence "do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve" (quotation marks omitted)).

### E

Lastly, Perez challenges the district court's classification of him as an armed career criminal, but he concedes that this Court's precedent is contrary to his position. We review de novo whether a prior conviction qualifies as a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *United States v. Joyner*, 882 F.3d 1369, 1377 (11th Cir. 2018).

Perez argues that both his 1987 Florida conviction for resisting arrest with violence and 1993 Florida strong-arm robbery conviction are not ACCA-qualifying offenses. But in *United States v. Hill*, we held that a prior conviction for resisting an officer with violence in violation of Fla Stat. § 843.01 categorically qualifies as a violent felony under the elements clause of the ACCA. 799 F.3d 1318, 1322

10

(11th Cir. 2015). And in *Welch v. United States*, we held that a prior conviction under Fla. Stat. § 812.13 for strong-arm robbery qualifies as a "violent felony" under the elements clause of the ACCA. 958 F.3d 1093, 1097 (11th Cir. 2020); *see also Stokeling v. United States*, 139 S. Ct. 544, 554–55 (2019). Because "[w]e are bound by prior panel decisions unless or until we overrule them while sitting *en banc*, or they are overruled by the Supreme Court," we affirm the district court's determination that Perez qualified as an armed career criminal. *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011).

**AFFIRMED.**